IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY<br>Plaintiff,<br><br>v.<br><br>ZAYO GROUP LLC,<br>Defendant. | )<br>)<br>)<br>)<br>)       Civil Action No. 2:21CV298 (RCY)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion to Dismiss for Improper Venue or in the Alternative, Motion to Transfer Venue to the Eastern District of Virginia, Alexandria Division (ECF Nos. 11 and 14) and Defendant's Amended Motion to Dismiss for Improper Venue (ECF No. 29). The Motions have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.

**I. BACKGROUND**

Norfolk Southern Railway Company ("Plaintiff" or "NSRC") is a Virginia Corporation with its principal place of business in Virginia. (Am. Compl., ECF No. 19 at ¶ 7.) Zayo Group, LLC ("Defendant" or "Zayo") is a Delaware and Colorado limited liability company based on the citizenship of its sole member, Zayo Group Holdings, a Delaware corporation with its principal place of business in Colorado. (*Id.* at ¶ 8.)

On November 18, 1999, NSRC and Zayo entered into a Duct Lease ("Duct Lease") granting Zayo the right "to occupy and use [NSRC's] vacant duct within [its railroad right-of-way] for the purpose of installing and operating a fiber optic communications system." (*Id.* at ¶ 14.) The

1

Duct Lease gave Zayo the exclusive right to use the duct, located within NSRC's 24.7-mile corridor extending from Alexandria, Virginia, to Manassas, Virginia. (*Id.*) The Duct Lease provided an initial 20-year term with the option to renew upon expiration. (*Id.* at ¶ 15.) The Duct Lease also contained an "Adjusted Rental" provision that provided that if Zayo exercised its renewal option at the end of the Initial Term or the First Renewal Term, the rent owing would be adjusted to reflect the fair market value of the lease for the subsequent Renewal Term. (*Id.* at ¶ 16.) The Duct Lease also provided a dispute resolution mechanism to determine the adjusted rental price which left the determination to a panel of appraisers. (*Id.* at ¶ 17.)

On April 4, 2019, Zayo renewed the Duct Lease. (*Id.* at ¶ 21.) Upon the renewal, NRSC conducted a valuation appraisal and proposed an adjusted rental rate to Zayo, which Zayo rejected. (*Id.* at ¶ 22.) Subsequently, Zayo engaged a third party to conduct a valuation appraisal. (*Id.* at ¶ 24.) Due to the timing of Zayo's valuation appraisal, NSRC alleged that Zayo was in breach of the Duct Lease. (Am. Compl. Ex. B, ECF No. 19-2.) Zayo disputed that it was in breach, citing a force majeure delay. (*Id.*) The parties then executed an amendment to the Duct Lease ("Third Amendment") addressing the appraisal issues and agreeing to hire a third appraiser to determine the adjusted rental rate if NSRC disagreed with Zayo's valuation appraisal. (*Id.*) Zayo then attempted to negotiate the adjusted rental rate based on the third party's valuation but NSRC rejected the proposal. (Am. Compl. at ¶ 24.) As agreed within the Duct Lease and Third Amendment, the parties hired a third appraiser and formed a panel consisting of NSRC's appraiser, Zayo's appraiser, and the third appraiser hired by both parties. (*Id.* at ¶¶ 27-29.)

Upon forming the appraisal panel, the parties did not agree as to whether the panel could proceed by majority vote or had to render a unanimous decision. (*Id.* at ¶ 29.) Nevertheless, the parties agreed to allow the panel to proceed. (*Id.*) The panel issued a final decision on February

9, 2021, but Zayo's adjuster dissented to the adjusted rental amount. (*Id.* at ¶ 31.) On February 19, 2021, NSRC issued two invoices to Zayo for rent due based on the adjusted rental amount determined by the panel's final decision. (*Id.* at ¶ 32.) When Zayo failed to pay both invoices, NSRC warned Zayo that it would be in default under the Duct Lease. (*Id.* at ¶ 33.) In response, Zayo engaged counsel and informed NSRC that it believed that the adjusted rental amount was invalid because it was determined by a majority and not unanimous decision by the panel. (*Id.* at ¶ 34.) Zayo asserted that regardless of the determination of the valuation experts, the adjusted rental amount was "too high." (*Id.*) NSRC has brought suit to recover the rental amount owed pursuant to a breach of contract claim.

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint on May 26, 2021, in the Eastern District of Virginia, in the Norfolk Division against Defendant. (ECF No. 1.) Defendant filed a Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue to the Eastern District of Virginia, Alexandria Division (ECF Nos. 11 and 14) on June 25 and 28, 2021. On July 2, 2021, Plaintiff filed an Amended Complaint (ECF No. 19), a Memorandum in Opposition to Zayo's Motion to Dismiss for Improper Venue (ECF No. 20), and a Memorandum in Opposition to Zayo's Motion to Transfer Venue (ECF No. 21). On July 8, 2021, Defendant filed a Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Defendant's Motion to Dismiss (ECF No. 23) and a Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer (ECF No. 24). On July 9, 2021, Plaintiff filed a Letter Regarding Mootness (ECF No. 26), addressing Defendant's Reply in support of its motion to transfer, which had asserted that Defendant's Motion to Transfer was moot because Plaintiff had filed an Amended Complaint. In the letter, Plaintiff asserted that the Motion to Dismiss was moot but the Motion to Transfer

remained ripe for consideration because it relied on facts outside of the pleadings. (ECF No. 26.) On July 16, 2021, Defendant filed an Amended Motion to Dismiss for Improper Venue (ECF No. 29) and a Memorandum in Support (ECF. No. 30). Plaintiff filed a Response in Opposition (ECF No. 34) on July 28, 2021, followed by Defendant's Reply filed on August 3, 2021 (ECF No. 35). Since Plaintiff filed an Amended Complaint, the initial Motion to Dismiss is moot.[1] Therefore, the Court only considers the Motion to Transfer and the Amended Motion to Dismiss.

### III. STANDARDS OF REVIEW

In order to survive a motion to dismiss for improper venue without an evidentiary hearing, the plaintiff must make a *prima facie* showing of venue. Whether venue is proper is determined by 28 U.S.C. § 1391 ("§ 1391") as modified by the Eastern District of Virginia's Local Rule 3(C) ("Local Rule 3(C)"). Local Rule 3(C) states that "28 U.S.C. § 1391 *et seq.* shall be construed as if the terms 'judicial district' and 'district' were replaced with the term 'division.'" E.D. Va. Loc. R. 3(C). As such, § 1391(b) should be read as:

> A civil action may be brought in – (1) a [division] where any defendant resides, if all defendants reside in the same State, (2) a [division] in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a [division] in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no [division] in which the action may otherwise be brought.

*See* 28 U.S.C. § 1391(b); E.D. Va. Loc. R. 3(C). When evaluating "whether events or omissions are sufficiently substantial to support venue," the court should not only focus "on those matters that are in dispute or that directly led to the filing of the action." *Mitrano v. Hawes*, 377 F.3d 402,

---

[1] In the context of this matter, the Court finds that the first Motion to Dismiss for Improper Venue or in the Alternative, Motion to Transfer Venue to the Eastern District of Virginia, Alexandria Division (ECF Nos. 11 and 14) is moot as to the Motion to Dismiss (ECF No. 14) because Plaintiff filed an Amended Complaint. (ECF No. 19.) *Ion Beam Applications, S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 554 (E.D. Va. 2000) ("[T]he motion to dismiss was effectively mooted by the plaintiffs' amended complaint . . ."); *Locklair v. Conair Corp., Inc.*, No. 2:18-CV-3514-DCN, 2019 WL 1316091, at *1 (D.S.C. Mar. 22, 2019) (pending motion to dismiss mooted by amended complaint, therefore court only considered motion to transfer). This opinion therefore addresses Defendant's Motion to Transfer (ECF No. 11) and Defendant's Amended Motion to Dismiss for Improper Venue (ECF No. 29).

405 (4th Cir. 2004) (citation omitted). The court should instead "review 'the entire sequence of events underlying the claim.'" *Id.* (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)). Under 28 U.S.C. § 1406(a), "if venue is found to be not proper in the judicial district, the court may dismiss the action, or transfer the action to a district where it otherwise could have been brought in the interest of justice." *T. & B. Equip. Co. v. RI, Inc.*, No. 3:15-CV-337, 2015 WL 5013875, at *2 (E.D. Va. Aug. 24, 2015) (citing *Douglas v. D.B. Va., LLC*, No. 4:10CV80, 2010 WL 5572830, at *3 (E.D. VA. Dec. 13, 2010)).

## IV. PARTIES' ARGUMENTS

Plaintiff contends that venue is proper in the Norfolk Division because a substantial part of the events or omissions giving rise to the breach-of-contract dispute occurred in this judicial division. (*See* Resp. Opp'n, ECF No. 34.) Plaintiff supports its claim by asserting that its corporate headquarters and principal executive offices have been located in Norfolk throughout the lease; personnel in Plaintiff's Norfolk headquarters negotiated the Duct Lease before it was first signed in 1999; Norfolk-based personnel signed the original Duct Lease and the First Amendment to the Duct Lease; Norfolk-based personnel participated in the negotiation and formation of the Third Amendment to the Duct Lease; Norfolk-based personnel communicated with Defendant and the appraisal panel about the appraisal process that led to the rental rates at issue; neither the Duct Lease nor its Amendments were negotiated or executed, in any part, in the Alexandria Division; and Norfolk is where the effects of Defendant's breach were felt. (Resp. Opp'n at 3.)

In its Amended Motion to Dismiss for Improper Venue, Defendant argues that a substantial part of the events or omissions giving rise to the claim did not occur in Norfolk, but elsewhere. (Mem. Supp., ECF No. 30 at 5-6.) Defendant asserts that, contrary to Plaintiff's allegations, exhibits attached to Plaintiff's Amended Complaint establish that most of the relevant events

5

occurred outside of the Norfolk Division. (*Id.* at 6.)  Specifically, the Duct Lease states that Plaintiff has a business address in and requires that notices be sent to an Atlanta, Georgia, address. (*Id.*)  Further, the Third Amendment to the Duct Lease was signed by Plaintiff's "GVP Real Estate" who also appears to be located in Atlanta, Georgia. (*Id.*)  Defendant asserts that execution and performance under the Duct Lease occurred outside of the Norfolk Division and to the extent that Plaintiff performed under the contract, it did so in the Alexandria Division where the duct is physically located. (*Id.* at 6-7.)  Defendant also received two invoices and transmitted payment[2] and correspondence to Atlanta, Georgia, and Charlotte, North Carolina. (*Id.* at 7.; ECF No. 19-5.)

Defendant also disputes Plaintiff's claim that Norfolk is where the effects of the breach were felt. (*Id.*)  Defendant argues that a breach of contract for nonpayment would arise where the Defendant's offices are located and where the refusal to pay occurred which is also outside of the Norfolk Division. (*Id.* at 7-8.).  Finally, Defendant asserts that Plaintiff's claims that Norfolk-based personnel may have been involved with both the negotiation and signing of the agreement fail to establish that a substantial part of the events and omissions that gave rise to Plaintiff's claims occurred in the Norfolk Division. (*Id.* at 8.)

## V. DISCUSSION

The Court finds that the Norfolk Division is not the proper venue for this action because Plaintiff has failed to make a *prima facie* showing that venue is proper in the Norfolk Division. Plaintiff has not shown that a substantial part of the events or omissions giving rise to the breach of contract claim at issue occurred in the Norfolk Division.  However, since a substantial part of the property that is the subject of this action is situated in the Alexandria Division, the Alexandria Division is the proper venue.

---

[2] Defendant received a letter and invoices from Plaintiff that originated in Atlanta, Georgia. (Mem. in Supp. at 7.)

When evaluating a motion to dismiss for improper venue, "[t]he court need not accept the pleadings as true, but instead may consider outside evidence." *T. & B. Equip. Co. v. RI, Inc.*, No. 3:15-CV-337, 2015 WL 5013875, at *2 (E.D. Va. Aug. 24, 2015) (citations omitted). Nonetheless, "the Court must still draw all inferences in favor of the plaintiff." *Id.* For contractual disputes, "courts have recognized that particular attention should be paid to those core aspects of any contract dispute, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Id.* (quoting *Wye Oak Tech. Inc., v. Republic of Iraq*, No. 1:09cv793, 2010 WL 2613323, at *10 (E.D. Va. June 29, 2010) (internal quotation marks omitted). A court may also consider "the event that allegedly entitled the plaintiff to the payment [now] sought under the contract." *Id.* (quoting *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004)).

The Court considers the core aspects of this contractual dispute based on Plaintiff's claims within the Amended Complaint and the information provided in its accompanying exhibits. Although there are a few occurrences that appear to have taken place within the Norfolk Division, those events do not constitute a *substantial part* of the events and omissions that gave rise to the breach of contract dispute at issue.

First, the parties are signatories to the first iteration of the Duct Lease signed in 1999. (Am. Compl. at ¶ 14.) According to Plaintiff, the Duct Lease was negotiated and signed by Plaintiff's Norfolk-based personnel. (*Id.* at ¶ 12.) However, a review of the Duct Lease reveals that Plaintiff's business address is in Atlanta, Georgia. (Am. Compl. Ex. A.) The Duct Lease also contains a "Notices" provision that requires any or all notices or demands to Plaintiff to be addressed to Plaintiff's Director of Real Estate in Atlanta, Georgia. (*Id.*) As such, even if the Duct Lease was

7

negotiated by some Norfolk-based personnel, any communications regarding the Duct Lease—likely including discussions regarding renewal—were to be directed to Atlanta, Georgia[3].

Second, is the Third Amendment to the Duct Lease which governs the determination and payment of the adjusted rental rates. The Third Amendment is arguably more important than the initial Duct Lease because the parties' dispute stems from the renewal of the Duct Lease and Defendant's refusal to pay the adjusted rental rates which were determined pursuant to the Third Amendment. Plaintiff claims that its Norfolk-based personnel also participated in the negotiation and formation of the Third Lease Amendment. (Am. Compl. at ¶ 12.) Yet, the Third Amendment was signed and executed by Patti G. Carroll, Plaintiff's "GVP Real Estate," located in Atlanta Georgia. (Mem. in Supp. at 6.)

Most importantly, the Court considers where the breach occurred. Defendant argues that in cases similar to this one, where non-payment is at issue, the ensuing claim would arise in Defendant's office where the refusal to pay occurred. *Deady Advert., Inc. v. Foam Indus., Inc.*, No. A-179, 1977 WL 191133, at *1-2 (Richmond Cir. Ct. 1977) ("These obligations were to pay money for services performed or to be performed by the plaintiff. The payment of money for services rendered by the defendant would have emanated from Norfolk, Virginia, its corporate offices. Therefore, the breach of the contract by the defendant occurred at that location."). This conclusion is strongly supported by *Deady Advert.* In *Deady Advert.*, the cause of action was a breach of contract by a repudiation of its terms. *Id.* at *1. The court explained that "[t]he repudiation of the contract by the defendant is, in essence, a statement by it that it is unwilling to abide by its obligations under the contract." *Id.* As such, the breach occurred where the payment would have emanated from.

---

[3] Exhibit E to the Duct Lease titled "Parties to be Notified" also lists a Division Engineer located in Greenville, South Carolina, and a Public Utility Engineer located in Atlanta, Georgia.

Here, Plaintiff's claims are based on Defendant's alleged breach of its obligations under the Duct Lease by withholding over $4 million of rent owed to Plaintiff. (Am. Compl. at ¶ 4.) Specifically, Plaintiff alleges that Defendant "refused to pay the outstanding amounts due to Norfolk Southern under the Duct Lease." (*Id.* at ¶ 35.) Accordingly, under *Deady Advert.*, Defendant's nonpayment breach arises in Defendant's corporate offices, where the decision not to pay the rental amounts was made. That location is also outside of the Norfolk Division.[4] (*Id.* at ¶ 8).

With the forgoing facts in mind, it is clear that the substantial part of the events giving rise to the instant claim occurred outside of the Norfolk Division. Plaintiff claims that both the Duct Lease and the Third Amendment were negotiated by Norfolk-based personnel. However, the Court gives less weight to the initial negotiation of the Duct Lease because the lease renewal, the Third Amendment, and the appraisal procedure are at the core of this dispute. *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011) ("'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.").

---

[4] Defendant also asserted that a breach of contract claim for nonpayment under the contract arises where payment of the debt is to be paid under the contract. *Deering Milliken Rsch. Corp. v. Textured Fibres, Inc.*, 310 F. Supp. 491, 500 (D.S.C. 1970) (applying South Carolina law) ("The general rule is that place of payment of a debt, or contractual obligation, absent clear agreement to the contrary, is the residence or headquarters of the creditor."). Here, Plaintiff's claims are based on Defendant's alleged breach of its obligations under the Duct Lease by withholding over $4 million of rent owed to Plaintiff. (Am. Compl. at ¶ 4.) Accordingly, under *Deering Milliken Rsch. Corp.*, Defendant's nonpayment breach arises where the rental amounts are to be paid under the contract. Neither the Duct Lease nor the Third Amendment contain a provision dictating where payments should be made. However, Plaintiff's invoices, which were attached to the Amended Complaint, clearly state that the rental payments should be sent to Plaintiff's address in Charlotte, North Carolina which is also outside of the Norfolk Division. (Am. Compl. Ex. E.) However, the Duct Lease is governed by the laws of Virginia. (Am. Compl. Ex. A at ¶ 22.) As such, Virginia contract law governs the Court's evaluation of the alleged breach.

Furthermore, the assertion that Norfolk-based personnel also negotiated the Third Amendment and the appraisal, while important, does not rise to the level of a substantial part of the events giving rise to the breach of contract claim. The Third Amendment was executed by Plaintiff's personnel outside of the Norfolk Division, the nonpayment breach arose outside of the Norfolk Division, and even the property that is the subject of the lease is located outside of the Norfolk Division. The Norfolk-based negotiations and communications that took place appear more tangential than substantial to the dispute, and are insufficient to find venue in the Norfolk Division. *CMA CGM (Am.), LLC v. RLI Ins. Co.*, No. 12-cv-03306, 2013 WL 588978, at *2 (D. Md. Feb. 13, 2013) ("[E]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough.") (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)) (internal quotation marks omitted); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ( cautioning courts to "take seriously the adjective substantial."). Thus, the Court holds that a substantial part of the events or omissions that gave rise to Plaintiff's breach of contract claim against Defendant did not occur in the Norfolk Division.

Although venue in the Norfolk Division is unsupported by the "events and omissions" portion of § 1391(b)(2), the location of the property described in the Duct Lease, which is the subject of this action, supports a finding of venue in the Alexandria Division under the "property" section of the statute. The property described in the Duct Lease, the duct, is located in a corridor extending from Alexandria, Virginia, to Manassas, Virginia. (Am. Compl. at ¶ 14.) As such, a substantial part of the duct is located in the Alexandria Division. Moreover, both parties agree that venue is proper in the Alexandria Division. (Resp. Opp'n at 8; ECF No. 35 at 5.) Although venue is not proper in this Division, the Court concludes that dismissal is not an appropriate remedy.

Accordingly, in the interest of justice, the Court will transfer this action, pursuant to 28 U.S.C. §1406(a), to the Alexandria Division where venue is proper under § 1391(b)(2).

## VI. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss for Improper Venue (ECF No. 14) as moot and will grant Defendant's Motion to Transfer Venue to the Eastern District of Virginia, Alexandria Division (ECF No. 11). The Court will deny Defendant's Amended Motion to Dismiss (ECF No. 29) and will direct the Clerk to transfer this case to the Alexandria Division of the Eastern District of Virginia.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: November 23, 2021